Affirmed and Memorandum Opinion filed April 26, 2007








Affirmed and Memorandum Opinion filed April 26, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00131-CR

____________

 

JABARI BRITT, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 228th
District Court

Harris County, Texas

Trial Court Cause No. 1020668

 



 

M E M O R A N D U M   O P I N I O N

A jury found appellant, Jabari Britt, guilty of evading
arrest with a motor vehicle and assessed punishment at incarceration for one
year in the Texas Department of Criminal Justice, State Jail Division, probated
for five years.  See Tex. Penal
Code Ann. ' 38.04 (Vernon 2003).  In five issues,
appellant challenges the legal and factual sufficiency of the evidence, the
effectiveness of his trial counsel=s assistance, and
the trial court=s denial of his motion for a new trial. 
We affirm.








Factual and Procedural Background

On March 21, 2005, Houston Metro Police Officer Chris
Obenland was patrolling the area along the light rail corridor, south of
downtown Houston.  At approximately 11:39 p.m., Obenland was issuing a citation
to a motorist near the intersection of Main St. and Wheeler St.  Obenland
observed appellant driving a maroon Nissan Altima northbound on Main St.  At
least one passenger was riding in appellant=s vehicle, and the
front windows on the vehicle were rolled down.  Obenland observed appellant
making an illegal right turn onto Wheeler St.  Obenland got into his patrol car
and pursued appellant=s vehicle.  The weather was clear and dry,
and traffic was light.  

At appellant=s trial, Obenland
testified that the emergency lights on his patrol car were turned on when he
first observed appellant=s vehicle (because Obenland had just
finished issuing a citation to another motorist) and remained on during the
entire time he was in pursuit of appellant.  Obenland testified that his patrol
car was equipped with three types of emergency lights: (1) a light bar
containing bright LED lights and strobe lights mounted on top of the vehicle,
(2) red and blue flashing lights mounted on the grill, and (3) Awig-wag@ high beam
headlights that alternately flashed on and off to attract attention.  Obenland
further testified the emergency lights are more visible at night.  Obenland
turned on the patrol car=s siren near the intersection of Wheeler
St. and Highway 59. 

Obenland testified he pursued appellant eastbound on
Wheeler St. at a speed of approximately seventy miles per hour and caught up to
appellant=s vehicle near the intersection of Almeda Road. 
Obenland remained a safe distance behind appellant=s vehicle,
approximately fifty to one hundred yards.  Obenland testified that the patrol
car=s siren would have
been audible to appellant at this distance, particularly since the front
windows on appellant=s vehicle were rolled down.  There were no
vehicles between the patrol car and appellant=s vehicle.  








Appellant continued eastbound under the Highway 288
overpass and made a sharp right turn heading southbound in the one-way
northbound lanes of the Highway 288 feeder road. The operator of a northbound
vehicle swerved to avoid colliding with appellant=s vehicle.
Appellant then turned left onto Rosewood St. and stopped his vehicle near the
intersection of Dowling St.  Obenland took appellant into custody.  Appellant
did not have a driver=s license and was found to be in
possession of $2,727 in cash.  The odor of marijuana was present in appellant=s vehicle, and
marijuana was found in the backseat.  At the time of his arrest, appellant was
on deferred adjudication community supervision for possession of marijuana. 
Pursuant to the terms of his community supervision, appellant was prohibited
from consuming alcohol, possessing controlled substances, or associating with
persons consuming alcohol or possessing controlled substances.       

Three witnesses testified for the defense: Erica Gathers,
Roy Wright, and appellant.  Gathers testified she was appellant=s girlfriend and
the owner of the vehicle appellant was driving.  Gathers testified that she,
Wright, and appellant spent the evening playing pool at Dave & Busters,
where she consumed two or three mixed drinks.  Thereafter, the three occupants
of the vehicle stopped for food at a Wendy=s restaurant, and
were en route to Wright=s residence when they passed through the
intersection of Main St. and Wheeler St.  Gathers was sitting in the front
passenger=s seat, arguing with appellant, and Wright was riding
in the backseat.  Gathers testified she saw a police car as appellant turned
from Main St. onto Wheeler St.  Gathers testified she did not realize they were
being followed until they reached the intersection of Wheeler St. and Highway
288.  Gathers testified she first noticed the lights on the patrol car behind
them when appellant turned onto the Highway 288 feeder road.  Gathers further
testified that the front windows on the Nissan Altima were rolled down, but she
did not hear a police siren at any point in time on the night appellant was
arrested.  Gathers testified appellant stopped the vehicle Aas soon as he
found a safe spot to pull over.@ 








Wright testified he was riding in the backseat of the
vehicle, and appellant was driving to Wright=s residence when
they were stopped by the police.  Wright testified he saw a police car at the
intersection of Main St. and Wheeler St., but he did not realize they were
being followed until he saw the patrol car behind them at the intersection of
Wheeler St. and Highway 288.  When Wright saw the lights on the police car, he
told appellant that the police were following them.  Wright testified that the
front windows on the Nissan Altima were rolled down, but he never heard a
police siren.  Wright testified appellant stopped the vehicle as soon as he
realized the police were behind them.  Wright further testified that the
marijuana in the vehicle belonged to him, and he was convicted of possessing
the marijuana found in the vehicle.  








Appellant testified he spent the evening playing pool with
Gathers and Wright at Dave & Busters, where he consumed two beers. 
Appellant admitted he was driving Gathers= Nissan Altima on
the night of his arrest, but denied fleeing from the police.  Appellant
testified he was en route to Wright=s residence when
he saw Obenland conducting a traffic stop at the intersection of Main St. and
Wheeler St.  Appellant was arguing with Gathers, and the front windows on the
vehicle were rolled down.  Appellant admitted making an illegal right turn from
Main St. onto Wheeler St.  Appellant testified he traveled eastbound on Wheeler
St. and accidentally turned the wrong way on the Highway 288 feeder road. 
Appellant testified he intended to turn onto the southbound feeder road. 
However, because he was distracted by Gathers, appellant accidentally drove under
the overpass and turned onto the wrong street.  After realizing he was heading
the wrong way on a one-way street, appellant turned left on Rosewood St. to get
off the feeder road.  Appellant testified he Anever heard any
sirens@ and did not
realize the police were following his vehicle until he turned on the Highway
288 feeder road.  Appellant testified that when he turned on the Highway 288
feeder road, Wright told appellant that the police were behind them and Wright
had some marijuana.  Appellant testified he was not aware of the presence of
marijuana in the vehicle prior to that time.  Appellant further testified he
did not see the lights on the patrol car behind them until he turned onto
Rosewood St., and he pulled over as soon as possible.  On cross-examination,
appellant testified that at the time of his arrest he was on community
supervision.  Appellant testified he did not have his driver=s license with
him.  Appellant further testified that under the conditions of his community
supervision, he was prohibited from driving a motor vehicle without a driver=s license,
consuming alcohol, going to bars, possessing drugs, or associating with people
in possession of drugs.  

The jury found appellant guilty of felony evading arrest
and assessed punishment at one year incarceration, probated for five years. 
The trial court signed its judgment on December 9, 2005.  This appeal followed.

Discussion

I.
The Evidence is Legally Sufficient








In his first issue, appellant contends the evidence is
legally insufficient to sustain the jury=s finding that he
evaded arrest in a motor vehicle.  In a legal sufficiency review, we view all the evidence in
the light most favorable to the verdict and determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct.
2781, 2789, 61 L.Ed.2d 560 (1979); Salinas v. State, 163 S.W.3d 734, 737
(Tex. Crim. App. 2005).  The jury, as the sole judge of the credibility of the
witnesses, is free to believe or disbelieve all or part of a witness=s testimony.  Jones v. State,
984 S.W.2d 254, 257 (Tex. Crim. App. 1998).  We do not engage in a second
evaluation of the weight and credibility of the evidence, but only ensure the
jury reached a rational decision.  Muniz v. State, 851 S.W.2d 238, 246
(Tex. Crim. App. 1993); Harris v. State, 164 S.W.3d 775, 784 (Tex. App.CHouston [14th Dist.] 2005, pet. ref=d). To be found guilty of evading
arrest, the jury had to find beyond a reasonable doubt that appellant
intentionally fled from a person he knew was a peace officer attempting
lawfully to arrest or detain him.  See
Tex. Penal Code Ann. ' 38.04(a) (Vernon
2003). Intent may be inferred from the words and conduct of the accused and the
surrounding circumstances.  Guevara v. State, 152 S.W.3d 45, 49B50 (Tex. Crim.
App. 2004).  In this case, the jury heard evidence that appellant drove his
vehicle a significant distance with a police car in pursuit.  Obenland
testified he caught up to appellant=s vehicle near the
intersection of Wheeler St. and Almeda St., and, by that time, the emergency
lights and siren on the police vehicle would have been noticeable to
appellant.  Appellant continued traveling on Wheeler St. and made two turns,
including one high-speed turn going the wrong way on a one-way street.  The
jury heard testimony that marijuana was found in appellant=s vehicle, and
appellant admitted under oath that he committed a traffic violation, he did not
have his driver=s license with him, and he had been
drinking alcohol. 

When
viewed in the light most favorable to the verdict, we hold that a
rational trier of fact could have concluded from the evidence presented that
appellant intentionally fled from a person he knew was a peace officer
attempting lawfully to arrest or detain him.  Accordingly, the evidence is
legally sufficient to support the verdict.  

 II.
The Evidence is Factually Sufficient








In his second issue, appellant contends there is factually
insufficient evidence to sustain the jury=s verdict.  In a factual sufficiency review, we
consider all the evidence in a neutral light.  Prible v. State, 175
S.W.3d 724, 730B31 (Tex. Crim. App. 2005).  The evidence may be factually
insufficient in two ways.  Id. at 731.  First, when considered by
itself, evidence supporting the verdict may be so weak that the verdict is
clearly wrong and manifestly unjust.  Id.  Second, where the evidence
both supports and contradicts the verdict, the contrary evidence may be strong
enough that the beyond-a-reasonable-doubt standard could not have been met.  Id. 
In conducting a factual sufficiency review, we must employ appropriate
deference so that we do not substitute our judgment for that of the fact
finder.  Jones v. State, 944 S.W.2d 642, 648 (Tex. Crim. App. 1996). 
Our analysis must consider the evidence appellant claims is most important in
allegedly undermining the jury=s verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.
Crim. App. 2003). 

Appellant contends the jury=s verdict is
undermined by his own testimony and the testimony of Wright and Gathers. 
Specifically, appellant argues the evidence is factually insufficient because
all three occupants of appellant=s vehicle
testified they were not aware that they were being followed by police until
appellant turned onto Rosewood St., and appellant stopped the vehicle as soon
as possible thereafter.  The jury is the sole judge of the facts, the
credibility of the witnesses, and the weight to be given the evidence. Wyatt
v. State, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000); Beckham v. State, 29
S.W.3d 148, 151 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d). In addition,
the jury may believe or disbelieve all or part of any witness=s testimony. Jones
v. State, 984 S.W.2d 254, 258 (Tex. Crim. App. 1998). Reconciliation of any
conflicts in the evidence falls within the exclusive province of the jury. Heiselbetz
v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995) (en banc). Thus, the
jury was entitled to believe Obenland=s testimony and
make reasonable inferences therefrom, regardless of conflicting testimony
offered by appellant, Wright, and Gathers.  See id.

The verdict is neither clearly wrong and manifestly unjust,
nor is the contrary
evidence so strong that the beyond-a-reasonable-doubt standard could not have
been met. Rather, the verdict reflects the jury=s decision to
believe some of the witnesses and not others, which is its role.  The evidence
is not factually insufficient.  Appellant=s second issue is
overruled.

 III.
Appellant Did Not Receive Ineffective Assistance of Counsel








In his third issue, appellant contends he received
ineffective assistance of counsel at trial.  In reviewing claims of ineffective
assistance of counsel, we apply a two prong test.  See Salinas v. State,
163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing Strickland v. Washington,
466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984)).  To establish
ineffective assistance of counsel, appellant must prove by a preponderance of
the evidence that (1) his trial counsel=s representation
was deficient in that it fell below the standard of prevailing professional
norms, and (2) there is a reasonable probability that, but for counsel=s deficiency, the
result of the trial would have been different. Id.  A reasonable
probability is a probability sufficient to undermine confidence in the outcome. 
Mallett v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).   

When evaluating a claim of ineffective assistance, the
appellate court looks to the totality of the representation and the particular
circumstances of each case.  Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999).  There is a strong presumption that counsel=s actions and
decisions were reasonably professional and were motivated by sound trial
strategy.  Salinas, 163 S.W.3d at 740; Stults v. State, 23 S.W.3d
198, 208 (Tex. App.CHouston [14th Dist.] 2000, pet. ref=d).  To overcome
the presumption of reasonable professional assistance, Aany allegation of
ineffectiveness must be firmly founded in the record, and the record must
affirmatively demonstrate the alleged ineffectiveness.@ Thompson,
9 S.W.3d at 814.  When the record is silent as to the reasons for counsel=s conduct, a
finding that counsel was ineffective would require impermissible speculation by
the appellate court. Stults, 23 S.W.3d at 208. Absent specific
explanations for counsel=s decisions, a record on direct appeal
will rarely contain sufficient information to evaluate an ineffective
assistance claim.  Bone v. State, 77 S.W.3d 828, 833 (Tex. Crim. App.
2002). 

Appellant filed a motion for new trial on December 16,
2005, and the trial court conducted a hearing on appellant=s motion on
February 13, 2006.  Appellant made no allegations of ineffective assistance of
counsel in his motion or at the hearing.  








On appeal, appellant makes five arguments in support of his
claim of ineffective assistance of counsel.  In his first argument, appellant
contends he received ineffective assistance because his counsel did not make an
opening statement.  Appellant claims he was prejudiced because his counsel
missed an opportunity to emphasize the weaknesses in the State=s case.  Trial
counsel=s decision not to
make an opening statement could be a matter of trial strategy.  See Taylor
v. State, 947 S.W.2d 698, 704 (Tex. App.CFort Worth 1997,
pet. ref=d).  Appellant
does not direct this court to any portion of the record containing an
explanation for his counsel=s decision.  Therefore, absent a contrary
showing in the record, appellant has failed to rebut the strong presumption
that trial counsel=s decision not to make an opening
statement was based on a sound trial strategy.  See Salinas, 163 S.W.3d
at 740.

In his second argument, appellant contends his counsel
rendered ineffective assistance by failing to object to the opinion testimony
of Officer Obenland.  During direct examination of Obenland, the State=s counsel asked
the following question: ADo you think [appellant] intentionally
fled from you?@  Obenland responded in the affirmative, and appellant=s counsel made no
objection.  Citing Weathersby v. State, 627 S.W.2d 729 (Tex. Crim. App.
1982), appellant argues his counsel rendered ineffective assistance by failing
to object to inadmissible opinion testimony regarding his guilt or innocence. 
In Weathersby, two police detectives testified the defendant Awas guilty@ of aggravated
robbery.  Id. at 730.  In the instant case, Obenland gave opinion
testimony regarding appellant=s mental state.  Opinion testimony
regarding the mental state of the accused is not inadmissible per se,
and rulings on the admissibility of lay opinion testimony are within the
discretion of the trial court.  See Tex.
R. Evid. 701, 704; Fairow v. State, 943 S.W.2d 895, 899B901 (Tex. Crim.
App. 1997) (A[W]e conclude that once the proponent of the opinion
establishes personal knowledge of the facts underlying the opinion, he has satisfied
the perception requirement of Rule 701.  This is so even if the opinion
concerns a culpable mental state.@).  Appellant=s counsel may have
made a strategic decision not to object in order to avoid drawing attention to
Obenland=s testimony and
potentially having his objection overruled.  The record is silent as to
appellant=s trial counsel=s strategy. 
Accordingly, we hold that trial counsel=s decision not to
object to the opinion testimony of Obenland does not support a claim of
ineffective assistance.   








Appellant next argues his trial counsel rendered
ineffective assistance by opening the door to extraneous offense evidence. 
Appellant was on deferred adjudication for possession of marijuana at the time
of his arrest.  Appellant=s trial counsel filed a motion in limine
to exclude evidence of appellant=s extraneous
offenses.  At a pre-trial hearing on appellant=s motion, counsel
for the State argued that he intended to introduce evidence of appellant=s deferred
adjudication to prove appellant=s motive, absence of mistake, and intent
to evade arrest, pursuant to Rule 404(b). See Tex. R. Evid. 403, 404(b).  The trial court ordered the State=s counsel to
approach the bench and obtain a ruling before putting extraneous offense
evidence before the jury.  During his cross-examination of Obenland, appellant=s counsel asked if
appellant had any outstanding warrants at the time of his arrest, and Obenland
responded that he did not think so.  The State argued that the question asked
by appellant=s trial counsel Aopened the door
for . . . the admission of the fact that he was on deferred at the time he was
evading to go to knowledge, intent, and motive.@  The trial court
sustained the State=s argument, and evidence of appellant=s deferred
adjudication was published to the jury.  








Appellant contends the fact that his trial counsel filed a
motion in limine to exclude extraneous offense evidence is proof that counsel=s question to
Obenland was not part of a trial strategy.  We disagree.  Appellant=s counsel may have
chosen to risk opening the door, based on a belief that evidence of appellant=s deferred
adjudication would be admitted, regardless of his question, for the purpose of
establishing appellant=s motive and intent to evade arrest.  See
Tex. R. Evid. 404(b); Powell
v. State, 189 S.W.3d 285, 286B87, 289 (Tex.
Crim. App. 2006) (holding evidence defendant was on parole was admissible under
Rule 404(b) for purpose of establishing defendant=s motive for
evading arrest).  Based on the appellate record, we cannot say that appellant=s trial counsel
rendered ineffective assistance by asking Obenland if appellant had any
outstanding warrants for his arrest.  See Thompson, 9 S.W.3d at 813B14 (holding
allegations of ineffective assistance must be firmly founded in the appellate
record).

In his fourth and fifth arguments, appellant contends his
counsel rendered ineffective assistance by failing to object to the
introduction of State=s Exhibits 4-B and 9 into evidence, and
failing to object to six questions asked by State=s counsel to
Obenland, which allegedly called for hearsay or speculation.  State=s Exhibit 4-B is
an audio recording of police radio transmissions from the night of appellant=s arrest.  Exhibit
4-B was introduced into evidence, without objection, under the business records
exception to the hearsay rule.  See Tex.
R. Evid. 803(6).  Without publishing Exhibit 4-B, the State=s counsel asked
Obenland if he would be surprised to learn that the audiotape contained a
dispatch stating appellant was on probation for delivery of marijuana. 
Obenland testified he would not be surprised.  Appellant=s trial counsel
did not object.  








State=s Exhibit 9 consists of certified copies
of court documents pertaining to appellant=s prior deferred
adjudication and community supervision for the offense of possession of
marijuana.[1] 
Exhibit 9 was introduced into evidence without objection.  Thereafter, the
State=s counsel
questioned Obenland regarding the conditions of appellant=s community
supervision, and Obenland read the following statement from Exhibit 9: AAvoid injurious or
vicious habits, including abstaining from the possession or use of all
intoxicating beverages and all unlawful possession or use of controlled
substances or dangerous drugs.@  Counsel for the State asked Obenland, AAnd what happens
if someone violates one of those conditions or rules, do you know?@  Obenland
responded, AIt=s up to the judge.  The judge could . . .
increase the - - or put them in jail or revoke their probation, any number of
things.  I mean, it=s up to the judge.@  Appellant=s counsel did not
object.

In support of his fourth and fifth arguments, appellant
cites Ex parte Welborn, 785 S.W.2d 391 (Tex. Crim. App. 1990).  In Welborn,
a habeas corpus proceeding, the applicant=s trial counsel
gave detailed testimony about the reasons for his conduct in representing the
applicant at trial.  Id. at 392B93.  In light of
counsel=s testimony, the Welborn
court concluded that the numerous deficiencies in representation were not part
of a trial strategy; rather, they were the result of inexperience, lack of
familiarity with the State=s case, and failure to interview any of
the State=s witnesses.  Id. at 396.  Appellant raises
some of the same claims of ineffective assistance asserted by the applicant in Welborn. 
However, unlike Welborn, the  record in the instant case is void of
information regarding the reasons for appellant=s trial counsel=s conduct.

The State argues that appellant=s trial counsel=s decision not to
object to evidence of appellant=s prior community supervision may have
been based on strategy.  The State contends appellant=s  counsel may
have wanted evidence of appellant=s prior guilty
plea in evidence because it would lend credibility to appellant=s denial of guilt
in the present case.  The State further suggests that appellant=s counsel may have
chosen not to object to the evidence in order to avoid drawing the jury=s attention
further to the evidence.  See Duren v. State, 87 S.W.3d 719, 734 (Tex.
App.CTexarkana 2002, no
pet.) (holding trial counsel=s decision not to object to extraneous
offense evidence may be explained as reasonable trial strategy not to draw the
jury=s attention to the
evidence).  Because the record is silent as to the basis for counsel=s decision not to
object to the admission of State=s Exhibits 4-B and
9, or the related questions asked by State=s counsel, we hold
that appellant has failed to overcome the presumption that appellant=s trial counsel=s decision was
based on a sound trial strategy.  See Salinas, 163 S.W.3d at 740.      








While appellant points to five instances where he contends
trial counsel was ineffective, he presents no evidence to rebut the presumption
that trial counsel=s actions were the result of reasonable
strategic decisions.  From the record in this case, one could conclude that
there were professionally sound reasons for trial counsel=s conduct or one
could speculate that there were not.  As an appellate court, we cannot engage
in such speculation. Stults, 23 S.W.3d at 208. Because appellant has
failed to overcome the presumption of reasonable professional assistance, we
overrule his third point of error.  

IV. The Trial
Court Did Not Err in Denying Appellant=s Motion for New
Trial

In his fourth issue, appellant contends the trial court
erred in denying his motion for new trial.  Appellant filed a motion for new
trial alleging the verdict was contrary to the law and evidence, and the jurors
reached a compromise verdict.  The trial court conducted a hearing on February
13, 2006 and denied appellant=s motion.  

An appellate court reviews a trial court=s denial of a
motion for new trial under an abuse of discretion standard.  Holden v. State,
201 S.W.3d 761, 763 (Tex. Crim. App. 2006).  A trial court abuses its
discretion in denying a motion for new trial only when no reasonable view of
the record could support the trial court=s ruling.  Id.








 Appellant makes two arguments in support of his fourth
issue.  In his first argument, appellant contends the trial court erred in
refusing to consider the affidavits of two jurors. At the February 13 hearing,
appellant argued he was entitled to a new trial because the jury reached a compromise
verdict.  In support of his contention, appellant provided the affidavits of
two jurors.  In their affidavits, the jurors testified that they agreed to
change their votes from not guilty to guilty, in exchange for a promise that
appellant would be sentenced to probation.  The State objected to the jurors= affidavits, and
the trial court ruled that the jurors were not competent to testify about the
subject matter contained in the affidavits.  In making its ruling, the trial
court quoted portions of Rule 606(b).[2]  
See Tex. R. Evid. 606(b). 


Citing Salazar, appellant argues the trial court
erroneously excluded the jurors= affidavits because the State did not
specifically object on the basis of Rule 606(b).  See Salazar v. State,
38 S.W.3d 141,147 (Tex. Crim. App.), cert. denied, 534 U.S. 855, 122
S.Ct. 127, 151 L.Ed.2d 82 (2001) (holding Rule 606(b) does not apply absent an
objection). Our review of the record shows that counsel for the State
objected to the affidavits on the ground that Aonce a jury=s verdict has been
reached in a case, there are very limited circumstances where the Court can
consider the affidavits of the jurors. . . .@  The trial court
interceded and made the following ruling: A[A] juror can
testify after trial only about whether an outside influence was brought to bear
upon the juror or to rebut a claim that the juror was not qualified, neither of
which is raised in this motion for new trial.  It=s denied.@ 








We hold that the State=s objection was
sufficiently specific to inform the court and opposing counsel of the basis for
the objection.  We have reviewed the jurors= affidavits.[3] 
We conclude that the jurors= testimony is not a proper basis for proof
of juror misconduct because the testimony relates solely to matters occurring
during deliberations and does not fall within either of the exceptions set out
in Rule 606(b).  See Tex. R.
Evid. 606(b).  Accordingly, the  trial court did not err in excluding
the juror=s affidavits.     

In his second argument, appellant contends the trial court
read a coercive Allen charge to the jury, which caused the jurors
to reach a compromise verdict.  After deliberating for a period of time, the
jury reported to the judge that they were unable to unanimously agree on a
verdict.  The trial court instructed the jury as follows:

If this jury finds itself unable to
arrive at a unanimous verdict, it will be necessary for the court to declare a
mistrial and discharge the jury.  The indictment will still be pending, and it
is reasonable to assume that the case will be tried again before another jury
at some future time.  Any such future jury will be impaneled in the same way
this jury has been impaneled and will likely hear the same evidence which has
been presented to this jury.  The questions to be determined by that jury will
be the same questions confronting you, and there is no reason to hope the next
jury will find these questions any easier to decide than you have found them. 
With this additional instruction, you are requested to continue deliberations
in an effort to arrive at a verdict that is acceptable to all members of the
jury, if you can do so without doing violence to your conscience.  Don=t do violence to
your conscience, but continue deliberating.

Appellant cites no authority, and we are not aware of any,
which has held this type of charge to be erroneous.  To the contrary, this
court and the Court of Criminal Appeals have approved Allen charges
containing language almost identical to the charge at issue.  See Arrevalo
v. State, 489 S.W.2d 569, 571B72 (Tex. Crim.
App. 1973); Willis v. State, 761 S.W.2d 434, 437B38 (Tex. App.CHouston [14th
Dist.] 1988, pet. ref=d).  The trial court did not abuse its
discretion in denying appellant=s motion for new trial.  Appellant=s fourth issue is
overruled.

V. The Appellate
Record is Not Incomplete








In his fifth issue, appellant claims he should be granted a
new trial because his motion for new trial is missing from the appellate
record.  The supplemental clerk=s record filed in this court on August 3,
2006 contains a certified copy of appellant=s motion for new
trial.  Appellant=s fifth issue is overruled.  

 Conclusion

Having overruled each of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

 

/s/      John S. Anderson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed April 26, 2007.

Panel consists of Justices Yates,
Anderson, and Hudson.

Do Not Publish C Tex. R. App. P. 47.2(b).

 









[1]  State=s
Exhibit 9 consists of an
order from the Panola County Court at Law granting appellant deferred
adjudication for the offense of possession of marijuana, an order granting
community supervision, an order extending the period for completion of certain
conditions of community supervision, the State=s motion to revoke community supervision, an order
issuing capias for appellant=s arrest, and an order to any peace officer or community supervision
officer to arrest appellant.  





[2]  Rule 606(b) provides:

Upon inquiry into
the validity of a verdict or indictment, a juror may not testify as to any
matter or statement occurring during the jury=s
deliberations, or to the effect of anything on any juror=s mind or emotions or mental processes, as
influencing any juror=s
assent to or dissent from the verdict or indictment.  Nor may a juror=s affidavit or any
statement by a juror concerning any matter about which the juror would be
precluded from testifying be admitted in evidence for any of these purposes. 
However, a juror may testify: (1) whether any outside influence was improperly
brought to bear on any juror; or (2) to rebut a claim that the juror was not
qualified to serve. 

Tex. R. Evid. 606(b).





[3]  In its appellate brief, the State asserts that the
jurors= affidavits are not part of the appellate record. 
However, the jurors= affidavits are part of the clerk=s record.